United States District Court
Southern District of Texas

**ENTERED**

January 12, 2026

Nathan Ochsner, Clerk

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

KRISTIN JONES, §
§
    *Plaintiff,* §
§
VS. § CIVIL ACTION NO. 4:24-cv-1226
§
NIMA GOHARKHAY PLLC, doing business §
as PREGNANCY SPECIALTY CENTER OF §
TEXAS, §
§
    *Defendant.* §

### ORDER

Pending before the Court is a Motion for Complete Summary Judgment filed by Defendant Nima Goharkhay PLLC, doing business as Pregnancy Specialty Center of Texas. (Doc. No. 20). Plaintiff Kristin Jones responded, (Doc. No. 22), and Defendant replied, (Doc. No. 23). Also pending are Plaintiff's Objections to Defendant's Summary Judgment Exhibits and Evidence and Motion to Strike (Doc. No. 21), to which Defendant responded, (Doc. No. 24). Defendant also filed its own Motion to Strike Plaintiff's Evidence in Support of Response to Summary Judgment. (Doc. No. 25). After carefully reviewing the motions, the relevant pleadings, and the summary-judgment evidence, this Court overrules Plaintiff's objections to Defendant's summary-judgment evidence and **GRANTS** Defendant's Motion for Summary Judgment in its entirety, hereby dismissing Plaintiff's claims with prejudice.

### I.   BACKGROUND

This is a workplace discrimination dispute. Defendant Pregnancy Specialty Center of Texas ("PSC") is a medical group specializing in maternal fetal medicine. (Doc. No. 20 at 7). Plaintiff Kristin Jones ("Jones") worked as an ultrasound sonographer at PSC from April 14, 2019, until she resigned on February 10, 2023. (Doc. No. 22 at 6).

PSC is owned by Nima Goharkhay ("Dr. Goharkhay") who is also its chief physician. (Doc. No. 20-1 at 5). Roya Goharkhay ("Ms. Goharkhay"), Dr. Goharkhay's wife, has worked as PSC's administrator for nine years. (*Id.* at 2). In that role, she was responsible for various administrative tasks at PSC including managing payroll and performing human resources ("HR") duties. (*Id.*). ADP TotalSource ("ADP") was PSC's third-party HR vendor, providing PSC's payroll system and a designated HR generalist that Ms. Goharkhay could consult while fulfilling her HR duties. (Goharkhay Dep., Doc. No. 22-11 at 8:2–10:14). ADP also provided optional short-term disability benefits to PSC employees through the insurance company, MetLife. (Doc. No. 22-14 at 2–4; Doc. No. 20 at 10).

The short-term disability benefit plan provided by MetLife allowed PSC employees to receive approximately 60% of their weekly income for up to 26 weeks of short-term disability leave. (Doc. No. 22-14 at 25). The first relevant date under the policy is the day the plan-holder becomes disabled, meaning when they are no longer able to work. (*Id.* at 26–27). That date is followed by a 14-day "Elimination Period," during which MetLife's policy does not pay benefits. (*Id.*). After the Elimination Period passes, the plan-holder then starts to receive weekly payments from MetLife for the remainder of their short-term disability leave. (*Id.*). The amount of money MetLife pays to the plan-holder each week is based on the amount of money they were making before their disability and is calculated with PSC's assistance. *See* (*id.* at 28; Doc. No. 22-7 (Emails between MetLife and Ms. Goharkhay)).

During her employment at PSC, Plaintiff had two pregnancy-related leave periods. She received short-term disability benefits from MetLife during those leaves. The first occurred in 2020. During that first pregnancy, PSC provided Jones with medical care until she went out on leave. (Doc. No. 20 at 9). When she took her leave, Jones first exhausted all of her accrued paid

time off ("PTO") and then received short-term disability benefits from MetLife during the remainder of her leave. (*Id.* at 10; Doc. No. 22 at 7).

In August 2022, PSC learned of Jones's second pregnancy. (Doc. No. 22 at 8). Plaintiff's second pregnancy and her ensuing leave form the basis of the parties' dispute in this lawsuit. On August 15, 2022, a high-risk health concern related to her pregnancy was discovered and it necessitated immediate care. (Doc. No. 20 at 10). The very next day, Dr. Goharkhay performed an emergency medical procedure on Jones that saved her pregnancy during her second trimester. (*Id.*; Jones Dep., Doc. No. 22-12 at 122:19–24). August 15th was Jones's last day of work at PSC before she was placed on bedrest by her doctor for the remainder of her pregnancy. (Doc. No. 20 at 10).

According to MetLife's records, Jones's request for short-term disability benefits was initiated on August 23, 2022, and listed August 16, 2022, as the "Date of Disability," meaning the Elimination Period would start on the 16th, and Jones would start receiving benefit payments on August 30th. (Doc. No. 22-10 at 3). MetLife then contacted Ms. Goharkhay to obtain the information required to process Jones's short-term disability claim. (*Id.* at 4–8; Doc. No. 20-1 at 37–40).

After Ms. Goharkhay received MetLife's notification that Jones's short-term disability benefits would be effective as of August 16, 2022, she contacted Jones to inform her that she received a letter from ADP about Jones's benefits and that "[i]t said effective [A]ugust 16." (Doc. No. 20-1 at 44–45). Ms. Goharkhay also reminded Jones that she had to "term [Jones's] benefits effective [that] date." (*Id.*).[1] Jones thanked Ms. Goharkhay for that reminder. (*Id.*). On August 25th,

---

[1] In this exchange, the evidence indicates that "term," while not defined by the parties, in context seems to mean when Ms. Goharkhay had to mark Jones on leave in the ADP system, such that she no longer could receive other benefits, like PTO. In her deposition, Ms. Goharkhay explained that MetLife's letter indicated that August 16th was the start date of Jones's short-term disability, so Ms. Goharkhay had to terminate Jones in the ADP HR system. (Goharkhay Dep., Doc. No. 22-11 at 78:4–17.) Ms. Goharkhay also clarified in an email to her ADP contact that she was supposed to terminate Jones as of the date on the letter in the system. (Doc. No. 22-4 at 5–6).

Jones asked if it was "too late to exhaust [her] remaining [paid time off] before the [short-term disability] kicks in." (*Id.*). Ms. Goharkhay responded, "[u]nfortunately yes. August 16 was the date ADP termed you. So I can't retro it." (*Id.*). This response was in accordance with PSC's policy to not allow its employees to simultaneously receive short-term disability benefits and PTO benefits. In other words, employees had to exhaust their PTO before their short-term disability benefits began if they wanted to use it. (Goharkhay Dep., Doc. No. 22-11 at 17:18–18:13, 92:15–94:18). Otherwise, the employee's PTO would remain available and could be used when the employee returned back to work after leave. *See* (*id.*).

According to MetLife's claim records and email correspondence between MetLife, Ms. Goharkhay, and Jones, MetLife's August 24th email to Ms. Goharkhay requested various information about Jones's employment including her last day of work, the first day she was absent from work, and her hours worked per week. (Doc. No. 22-7 at 3–4). In response, Ms. Goharkhay informed MetLife that Jones worked 20 hours per week. (*Id.* at 4). MetLife then denied Jones's claim because she was "not eligible for [short-term disability] coverage," because she did not "work enough hours according to [the employer]." (Doc. No. 22-10 at 20–21).

Throughout September and October, Jones and MetLife communicated back and forth about why her short-term disability benefit payments had not started. MetLife asked Jones to confirm that she worked 20 hours per week, and Jones responded that she worked 40 hours per week at PSC. (Doc. No. 22-10 at 23). MetLife then asked PSC to confirm how many hours a week Jones was working before her disability leave began to calculate her benefit, to which Ms. Goharkhay informed MetLife that "[s]he does not work 40 hours per week." (*Id.* at 26). With that communication, Ms. Goharkhay attached "a report from 1/3/22 through 8/16/22 of worked hours" to allow MetLife to calculate her hours worked for itself. (*Id.* at 26–27; Doc. No. 22-7 at 2; Doc.

No. 22-8). This time report, exported from PSC's HR software, shows that Jones worked an average of 27.83 hours over the 32-week time period provided. (Doc. No. 22-8).

After more back and forth with MetLife, Jones's short-term disability claim was finally approved on October 3, 2022. (Doc. No. 22-10 at 36). Three days later, Jones received her first benefit payment of $2,331.43. (*Id.* at 52). That payment retroactively included all of the benefit payments she was owed from August 30th, which was when she would have started receiving her benefits. (*Id.*). For the remainder of her leave, Jones received $480 each week. (*Id.*). Despite no evidence that Jones questioned the amount with either MetLife or Ms. Goharkhay, Jones now argues that she was only receiving a "part-time benefit" rather than a full-time benefit. (Doc. No. 22 at 5). Jones delivered her baby in November 2022. (Doc. No. 22-10 at 40). While she was still on leave and receiving her short-term disability benefits, Jones filed an EEOC charge against PSC on or about December 21, 2022, alleging discrimination. (Doc. No. 20 at 14). Subsequently, the EEOC issued Jones a Dismissal and Notice of Rights on October 13, 2023. (*Id.*).

Jones returned to work in January 2023 but soon resigned from PSC. Her last day at work was February 10, 2023. (Doc. No. 22 at 9). Over a year later, Jones brought the instant lawsuit against PSC in the 270th District Court of Harris County, Texas. (Doc. No. 1-1 at 4). In her suit, she brought claims against PSC alleging sex/pregnancy discrimination, disability discrimination, and retaliation under Chapter 21 of the Texas Labor Code. (*Id.* at 4–11). The parties then jointly removed the case to this Court under its diversity jurisdiction. (*Id.* at 2).[2] Subsequently, PSC filed

---

[2] Subject matter jurisdiction is not an issue in this case. Jones only brings her employment discrimination claims under Chapter 21 of the Texas Labor Code, not under Title VII, so the parties have not invoked this Court's federal question jurisdiction. (Doc. No. 1-1 at 4-11). Despite that, the parties satisfy the requirements for diversity jurisdiction. Jones moved to Ohio after she left her job at PSC, and at the time of filing this lawsuit was a citizen of Ohio. (Doc. No. 1 at 2; Jones Dep., Doc. No. 22-12 at 124:2–127:19) (detailing how Plaintiff went back and forth from Texas to Ohio after her PSC employment concluded but ultimately bought a house in Ohio and had moved back there by July 2023). PSC is a corporation formed under the laws of the State of Texas with its principal place of business in Friendswood, Texas. (Doc. No. 1 at 2). The amount in controversy is greater than $75,000. (*Id.*). Therefore, diversity jurisdiction is satisfied.

its Motion for Summary Judgment on all of Jones's claims (Doc. No. 20), and Jones filed her objections to PSC's summary judgment evidence in her Motion to Strike, (Doc. No. 21). The parties responded, and those motions are now ripe for resolution.

## II. LEGAL STANDARD

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in

---

A Defendant sued in its own forum, like PSC has been in this case, typically cannot remove to federal court under the forum defendant rule, which states that a civil action removable solely on the basis of diversity jurisdiction under § 1332(a) "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." § 1441(b)(2). Even so, the forum defendant rule is a procedural nonjurisdictional rule that can be waived by a plaintiff. *See In re Shell Oil Co.*, 932 F.2d 1518, 1521–23 (5th Cir. 1991); *In re 1994 Exxon Chemical Fire*, 558 F.3d 378, 393–94 (5th Cir. 2009). Here, Jones consented to the case's joint removal to federal court, so she has waived the forum defendant rule's applicability. *See In re 1994 Exxon Chemical Fire*, 558 F.3d at 393.

favor of the nonmoving party. *Id.* at 248. It is the responsibility of the parties to specifically point the Court to the pertinent evidence, and its location, in the record that the party thinks are relevant. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). It is not the duty of the Court to search the record for evidence that might establish an issue of material fact. *Id.*

## III. ANALYSIS

### A. Plaintiff's Objections to Defendant's Summary Judgment Evidence (Doc. No. 21)

As a threshold matter, the Court must address Plaintiff's objections to Defendant's evidence. While the Court understands the need to object to improperly presented summary-judgment evidence, Plaintiff presents numerous unnecessary objections. In fact, many of these "objections" are really just arguments attacking Defendant's theory of the case instead of actual evidentiary objections. These objections are inappropriate and are overruled. With regard to the remaining objections, Jones primarily objects to three pieces of evidence: (1) she objects to Roya Goharkhay's Declaration as a whole and to numerous, specific paragraphs; (2) Defendant's Exhibit 4; and (3) Defendant's Exhibit 5.

First, Plaintiff objects in a number of places to evidence on relevance grounds. "Objections for relevance are generally unnecessary at the summary judgment stage because the inquiry would be duplicative of determining whether evidence creates a genuine dispute of material fact." *Duron v. Costco Wholesale Corp.*, 773 F. Supp. 3d 324, 336 (W.D. Tex. 2025). Accordingly, the Court will simply consider the evidence it finds relevant when determining the summary-judgment motion. As it follows, Plaintiff's relevance objections to Paragraphs 6, 7, 8, 10, 11, of Roya Goharkhay's Declaration (Doc. No. 21-1) are overruled.

Next, Plaintiff objects to Paragraphs 12, 13, 30 and 38 of the Declaration, which explain PSC's policy of not allowing its employees to use PTO when they are on short-term disability

leave and how Ms. Goharkhay calculated Plaintiff's prior hours to submit to ADP. (Doc. No. 21 at 3–4). Plaintiff's grounds for objection are that the Declaration is contradicted by or "glazes over" Ms. Goharkhay's deposition testimony. (*Id.* at 3–5). After review of the relevant portions of the deposition transcript, the Court disagrees with Jones's characterization of the evidence, and so the objection is overruled. (Goharkhay Dep., Doc. No. 22-11 at 18:2–19:7, 46:7–16, 77:18–78:25).

Next, Plaintiff objects to Paragraph 5, where Ms. Goharkhay states that since Jones was hired at PSC, nine other employees were pregnant and also took leave. (*Id.* at 3). Plaintiff complains that PSC refused to respond to an interrogatory on this subject, so "Defendant cannot now seek to introduce such new evidence after having refused production of the same." (Doc. No. 21 at 5). Plaintiff's interrogatory asked PSC to identify all employees who participated in the short-term disability benefits between a certain time period, and PSC objected to that request as being overbroad. (*Id.*). Jones did not move to compel a response to this interrogatory, nor did she narrow the scope of the interrogatory. (Doc. No. 24 at 3). Further, Plaintiff could have posed this question to Ms. Goharkhay at her deposition, which presumably occurred after this interrogatory response, or engaged in further discovery. She did not. (*Id.*). As no relevant evidentiary objection has been raised, this objection is overruled.

Next, Jones objects to Paragraphs 26–37 of the Declaration, stating the testimony relates to communications and documents that "can speak for themselves." (Doc. No. 21 at 6). This is not an evidentiary objection, and the Court will determine what evidence can speak for itself, so these objections are overruled.

Finally, Plaintiff objects to Paragraph 49 of the Declaration and Attachment 15 to Ms. Goharkhay's Declaration. (Doc. No. 21 at 7). Jones claims she did not receive the documents—Maria Hernandez's time-off requests from the PSC HR system—until five days after Goharkhay's

deposition, so Jones could not cross-examine Goharkhay on the allegations related to Hernandez. (*Id.* at 7–8). Even if that was the case, Jones compared herself to Hernandez in her own deposition, which took place before Ms. Goharkhay's deposition. When Jones declared Hernandez as a relevant comparator for her pregnancy discrimination claim, Ms. Goharkhay had not been deposed. *Compare* (Goharkhay Dep., Doc. No. 22-11, Deposition of Roya Goharkhay on May 15, 2025), *with* (Jones Dep., Doc. No. 22-12, Deposition of Kristin Jones on February 19, 2025). Even if the document displaying when Hernandez took time off was disclosed after Ms. Goharkhay's deposition, Jones had the opportunity to ask Ms. Goharkhay how she calculated and reported the time to ADP for Hernandez's short-term disability benefits. Moreover, Jones has not made it clear to the Court why not receiving this document would have prevented her from "cross-examin[ing] Ms. Goharkhay on the allegations related to Ms. Hernandez," as she claims. (Doc. No. 21 at 8). Jones should have known she needed to discuss Hernandez with Ms. Goharkhay before Ms. Goharkhay's deposition and certainly before Attachment 15 was produced in discovery. As such, this objection is overruled. This concludes Plaintiff's numerous objections to Ms. Goharkhay's Declaration and its respective attachments.

The next piece of evidence Plaintiff objects to is Defendant's Exhibit 4, which is the Declaration of Nicholas Sherren, an employee of ADP TotalSource. (Doc. No. 21 at 10–11). Jones complains that Defendant failed to timely identify Sherren, or any witness from ADP, prior to the close of discovery. (*Id.*). At this stage, the Court is more focused on the content of the proof. While it may need to address the alleged failure of the Plaintiff to properly disclose an individual in a later hearing, the Court will not blanketly disregard that declaration. Moreover, this exhibit does not impact the Court's ultimate outcome, so this objection is overruled.

9

Finally, Plaintiff objects to Defendant's Exhibit 5, which contains selected pages from the 52-page MetLife Claim Activity Record regarding Jones's short-term disability claim. (Doc. No. 21 at 11–15). Jones objects under optional completeness and complains that Defendant submitted an incomplete extract of the claim file, "invit[ing] the Court to rely on a curated and potentially misleading record." (*Id.* at 13). At this stage, optional completeness is not a worthwhile objection, so this objection is overruled. While it can be quite important at trial to ensure that a complete picture is placed before the fact finder, at the summary judgment stage, the opposing party need only attach the omitted portions to their reply to bring the omitted portions to the Court's attention. That being said, Plaintiff has indeed attached the full 52-page MetLife record to its Response to Defendant's Motion for Summary Judgment for the Court's review so that resolves any potential problem. (Doc. No. 22-10). Plaintiff also raises this same objection in objecting to Paragraph 23 of Ms. Goharkhay's Declaration. That objection is also overruled.

### B. Defendant's Motion to Strike Plaintiff's Evidence in Support of its Response to Summary Judgment (Doc. No. 25)

In addition to Plaintiff's numerous objections, Defendant has lodged their own objections to the evidence Plaintiff attached to its response to Defendant's Motion for Summary Judgment.

First, PSC objects to Kristin Jones's Declaration, which was attached to her response as Exhibit 13. (Doc. No. 25 at 2). PSC objects to numerous paragraphs due to a lack of personal knowledge under Rule 602, and at one point to hearsay under Rules 801–805. In reaching its decision, the Court does not rely on these portions of the Jones's Declaration, so the objection is sustained.

Next, PSC objects to portions of both Jones's and Ms. Goharkhay's depositions under Rule 602 for lack of personal knowledge. The Court does not rely on either of these portions of their respective depositions, so the objections are sustained.

10

Third, Defendant objects to the fact that Plaintiff attached the entire deposition transcripts for both Jones's deposition and Ms. Goharkhay's deposition to her Response, rather than just the portions she cites in her Response. (*Id.* at 4). These objections are overruled. The Court may consider the entire record, even though, as Defendant correctly points out, it does not have a duty to sift through the record to search for evidence to support or oppose the motion. *See* Fed. R. Civ. P. 56(c)(3).

Finally, Defendant objects to Exhibit 3 attached to Plaintiff's Response, which Plaintiff represents is a version of PSC's employee handbook that shows the difference between the version of the handbook applicable before Jones went on leave and the changes made to the handbook once Jones was already on leave. (Doc. No. 25 at 4). This version of the handbook is not material to the Court's outcome, so this objection is sustained.

Having addressed both Plaintiff and Defendant's evidence objections, the Court can now move to the merits of PSC's motion.

### C. Defendant's Motion for Complete Summary Judgment (Doc. No. 20)

PSC has moved for summary judgment on all three of Jones's claims: sex/pregnancy discrimination; (2) disability discrimination; and (3) retaliation. (Doc. No. 20). The Court will address each claim in turn.

### 1. Sex/Pregnancy Discrimination under Chapter 21 of the Texas Labor Code

The Texas Commission on Human Rights Act ("TCHRA") prohibits employers from discriminating "because of sex or on the basis of sex." Tex. Lab. Code § 21.106. Discrimination based on pregnancy constitutes discrimination based on sex. *Id.* § 21.106(a). "The Supreme Court of Texas has instructed Texas courts to consult judicial interpretations of Title VII and follow the approach of the United States Supreme Court in interpreting Title VII when reviewing TCHRA

claims." *Ross v. Judson Indep. Sch. Dist.*, 993 F.3d 315, 321 (5th Cir. 2021). A plaintiff can prove pregnancy discrimination with either direct evidence of discrimination or circumstantial evidence, which is analyzed under the *McDonnell Douglas* burden-shifting framework. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212 (5th Cir. 2001).

Jones's pregnancy discrimination claim focuses on two events: (1) PSC's refusal to allow Jones to use her PTO hours while she was already on short-term disability leave, and (2) PSC's alleged underreporting of Jones's average work hours to MetLife which allegedly lowered the total short-term disability benefits Jones received. (Doc. No. 22 at 16).

### i.    Jones's Direct Evidence of Discrimination

First, Jones alleges that comments made by Ms. Goharkhay provide direct evidence of pregnancy discrimination. (Doc. No. 22 at 13–15). "Direct evidence is evidence which, if believed, proves the fact [of intentional discrimination] without inference or presumption." *Portis v. First National Bank of New Albany, Mississippi*, 34 F.3d 325, 328-29 (5th Cir. 1994) (quoting *Brown v. East Mississippi Electric Power Association*, 989 F.2d 858, 861 (5th Cir. 1993)). "In the context of Title VII, direct evidence includes any statement or written document showing a discriminatory motive on its face." *Id.* at 329. A comment demonstrates an employer's discriminatory intent if it is "direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that [sex] was an impermissible factor in the decision to terminate the employee." *Maestas v. Apple, Inc.*, 546 F. App'x 422, 427–28 (5th Cir. 2013) (per curium). A statement may constitute direct evidence of pregnancy discrimination if it is: (1) pregnancy related; (2) close in time to the adverse employment action; (3) made by someone with authority over the adverse employment action; and (4) related to the adverse employment action. *See Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 608 (5th Cir. 2007).

None of Ms. Goharkhay's comments are sufficient direct evidence of pregnancy discrimination. First, Plaintiff cites an email exchange between Ms. Goharkhay and ADP, PSC's HR system administrator. (Doc. No. 22-4). In that exchange, Ms. Goharkhay asked ADP how to appropriately enter Jones's leave in PSC's system and asked ADP if PSC was "not required to hold the position if its NONFMLA for Labor or Pregnancy?" (*Id.* at 4–6).

This question posed to ADP is not direct evidence of discrimination against Jones because it is unrelated to the adverse employment actions that she alleges. Jones complains that she was unable to take her PTO at the same time as her short-term disability benefits and that she was not given the full short-term disability benefit that she was owed. Plaintiff attempts to characterize the above statement as "proof of intent and action in direct response to Plaintiff's unavoidable pregnancy complications." (Doc. No. 22 at 15). All this evidence tends to show is that Ms. Goharkhay was asking her HR contact about the details regarding whether PSC was required to hold a position open during leave. PSC did in fact hold the position for Jones, and she returned to her role at PSC after her leave. Jones does not allege that PSC wrongfully terminated her. The above statement has nothing to do with Jones's PTO or her short-term disability leave benefits, so it cannot be direct evidence of pregnancy discrimination. *See Reynolds v. Shady Brook Animal Hosp., Inc.*, No. 4:12-CV-2258, 2013 WL 5964564, at \*4 (S.D. Tex. Nov. 7, 2013) (finding a policy statement that is unrelated to the adverse employment actions the plaintiff suffered cannot be direct evidence of pregnancy discrimination).

Next, Plaintiff presents an email exchange between Ms. Goharkhay and Jones. In this exchange, Ms. Goharkhay informs Plaintiff that as she was completing Jones's disability paperwork with MetLife, she had to run a report in ADP regarding how many hours Jones had worked. That report showed Jones had only worked an average of 15 hours per week over the last

16 weeks. (Doc. No. 22-5). Ms. Goharkhay informed Jones she had to work a minimum of 32 hours per week when she returned to the clinic after her leave to be in line with company policies. (*Id.*). Jones responded with confusion at how Goharkhay ended up with the 15 hours per week average; that response was the end of the email exchange. (*Id.*). This exchange is not clearly pregnancy related, nor does it resemble the type of direct statements courts within the Fifth Circuit have found to be direct evidence of pregnancy discrimination. *See Sims v. Am.'s Fam. Dental LLP*, No. 4:16-CV-00417, 2017 WL 1397854, at *5 (S.D. Tex. Apr. 19, 2017) (finding supervisor's repeated remarks that "he was going to fire [plaintiff] because she was pregnant" were clearly direct evidence of pregnancy discrimination); *Martin v. Winn-Dixie Louisiana, Inc.*, 132 F. Supp. 3d 794, 818 (M.D. La. 2015) (supervisor's statement that plaintiff "couldn't do her job as Co-Director and be pregnant" was direct evidence of pregnancy discrimination).

The final "direct" evidence Plaintiff presents is the fact that PSC updated its employment handbook, "tighten[ing] PTO/STD access" as it relates to pregnancy and pregnancy related complications, less than four weeks after PSC learned of Jones's pregnancy. (Doc. No. 22 at 14). This evidence most obviously requires an inference by the trier of fact that the reason PSC allegedly updated its employment handbook was specifically to discriminate against Jones because of her pregnancy. Jones provides no evidence indicating the purpose of this handbook update was to target her and her pregnancy. Instead, Jones relies only on the fact that the update was made less than four weeks after PSC learned of her pregnancy. (Doc. No. 22 at 14). Jones believes this timing is suspicious and thus indicates that the handbook change was made because of her. (*Id.*). Nevertheless, mere temporal proximity between these two events cannot serve as direct evidence of discrimination because an inference must necessarily be made to reach the required conclusion. *See Webber v. Leson Chevrolet Co.*, No. 24-30637, 2025 WL 3218680, at *4 (5th Cir. Nov. 18,

2025) (per curium) ("Mere temporal proximity, then, does not amount to direct evidence of discrimination in this case; the timing of Webber's discharge would at best raise only an inference of discriminatory animus."). The fact finder must infer that since PSC changed its handbook four weeks after it learned of Jones's pregnancy, it must have made that handbook change because of Jones and her pregnancy. Furthermore, it is not apparent to the Court that any of the alleged changes to the handbook applied to Jones or were enforced against her while she was on leave. Accordingly, Ms. Goharkhay's statements are not direct evidence of pregnancy discrimination.

### ii. Jones's Circumstantial Evidence of Discrimination Under *McDonnell Douglas*

Since there is no direct evidence of pregnancy discrimination, Jones must rely on circumstantial evidence and the *McDonnell Douglas* burden-shifting framework to establish her sex discrimination claim. Under that framework, Jones has the initial burden of establishing a prima facie case of discrimination. *Ross v. Judson Indep. Sch. Dist.*, 993 F.3d 315, 321 (5th Cir. 2021) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). If she does so, then the burden shifts to PSC "to articulate some legitimate, nondiscriminatory reason for its action." *Id.* If PSC can provide such a reason, then the burden shifts back to Jones to prove that PSC's stated reason is pretextual. *Id.*

To establish her prima facie claim for pregnancy discrimination, Jones must establish that: (1) she was a member of the protected class, (2) she was qualified for the position at issue, (3) she suffered an adverse employment action, and (4) she was either replaced by someone outside the protected class or otherwise treated less favorably than others who were similarly situated but outside the protected class. *Santos v. Wincor Nixdorf, Inc.*, 778 F. App'x 300, 302 (5th Cir. 2019). The parties do not dispute the first two elements, that Jones was a member of a protected class and that she was qualified for her position. The parties do, however, dispute whether she has satisfied

elements three and four. Jones bases her prima facie case on two different alleged adverse employment actions: PSC not allowing her to use her PTO and short-term disability benefits at the same time, and PSC underreporting her hours to MetLife resulting in lower short-term disability benefit payments than she was entitled to. The Court will address each in turn.

### a) Jones's Prima Facie Case (PTO Hours)

Jones claims that she was not allowed to use the 10.3 hours of PTO she had accrued prior to her short-term disability leave beginning, and that this constituted an adverse employment action. That being the case, Jones retained her accrued PTO throughout her leave and would have been able to use that leave when she returned to work. Despite this, Plaintiff complains that a similarly situated employee who was not pregnant was treated more favorably because that employee was allowed to exhaust her PTO before taking short-term disability leave.

Jones's chosen comparator is Maria Hernandez, a sonographer at PSC. (Doc. No. 22 at 16; Jones Dep., Doc. No. 22-12 at 100:4–13). PSC admits that Hernandez took short-term disability leave while employed by PSC, received short-term disability benefits, and that she was not pregnant. (Jones Dep., Doc. No. 22-12 at 166:12–21; Doc. No. 20-1 at 10). Even assuming this denial of PTO is a sufficient adverse employment action (a claim Plaintiff has not cited any case law to support), Jones cannot overcome PSC's neutral reason for why it allowed Hernandez to use her PTO before going on short-term disability leave and why it did not allow Jones to do so.

### b) PSC's Legitimate, Nondiscriminatory Reason

PSC's company policy is to not allow its employees who are actively receiving short-term disability benefits from its third-party provider to also apply and receive their PTO benefits. *See* (Goharkhay Dep., Doc. No. 22-11 at 17:18–18:13, 92:15–94:18). This policy is facially neutral and is consistently applied to all employees. *See* (*id.*). Jones was not allowed to use her accrued

16

PTO hours because her short-term disability benefits had already begun according to MetLife. (Doc. No. 22-10 at 36) (showing Jones's claim was approved to start 8/16/2022). Evidence of a neutral company policy like this one satisfies the employer's burden under *McDonnell Douglas*. *See Hargett v. Phillips 66 Co.*, No. 4:22-CV-01851, 2025 WL 278632, at *14 (S.D. Tex. Jan. 22, 2025).

### c) Jones's Evidence of Pretext

Since PSC articulated a legitimate, nondiscriminatory reason for its action, Jones must demonstrate evidence that PSC's action was simply a pretext for discrimination. *Ross*, 993 F.3d at 321. "Pretext can be proven by any evidence that casts doubt on the credence of the employer's proffered justification for the adverse employment action." *Harris v. FedEx Corp. Servs., Inc.*, 92 F.4th 286, 297 (5th Cir. 2024).

In an attempt to demonstrate pretext, Jones argues that no written policy existed precluding the use of PTO during short-term disability leave. She claims that the version of PSC's employment handbook effective when she took the short-term disability leave at issue here "allowed PTO usage and did not bar it before an STD claim had actually been approved." (Doc. No. 22 at 17). Plaintiff has not directed the Court to where in PSC's employee handbook simultaneous use of PTO and short-term disability benefits was ever allowed by PSC. Further, after review of the two employment handbooks, the court cannot find a provision that supports Jones's contention that PSC ever allowed both of these benefits to be used at the same time. *See* (Doc. Nos. 22-1, 22-2).

Moreover, the mere fact that an employer has not reduced every single practice or policy to writing, without more, is not evidence that the policy or practice is pretext for unlawful discrimination. *See Utley v. MCI, Inc.*, No. CIV.A.3:05-CV-0046-K, 2008 WL 836419, at *41 (N.D. Tex. Mar. 24, 2008), *aff'd*, 320 F. App'x 250 (5th Cir. 2009). While it is true that an

17

employer's deviation from its written and unwritten policies and practices may raise an inference of pretext, Plaintiff has failed to provide any evidence that PSC deviated from its unwritten policy. *McMillian v. Aberdeen Sch. Dist.*, No. 1:22-CV-117-SA-RP, 2024 WL 69905, at *6 (N.D. Miss. Jan. 5, 2024). Instead, Jones provides three examples of employees being treated consistently with this unwritten policy.

The first example is Jones, herself. During her first pregnancy at PSC, Jones first exhausted all of her PTO before she started receiving her short-term disability benefits. (Goharkhay Dep., Doc. No. 22-11 at 91:24–93:18). Similarly, Hernandez exhausted all of her PTO before her short-term disability benefits began. *See* (Jones Dep., Doc. No. 22-12 at 128:15–25; Doc. No. 20-1 at 10). This is in direct contrast with Jones's second pregnancy, when after an emergency procedure Jones's short-term disability benefit start date was the day after her last day of work, effectively leaving her no ability to take her PTO before the short-term disability benefits began to accrue. According to MetLife's records, regardless of when she received her first payment, Jones's short-term disability benefits began on August 30, 2022, which was two weeks after her "Date of Disability," which was the first day after her last day of work at PSC before bed rest—August 16, 2022. (Doc. No. 22-10 at 46). This was in accordance with the MetLife policy's provision requiring a 14-day "elimination period" before any benefit can be received. (Doc. No. 22-14 at 25, 27).

There is no evidence or indication that PSC's enforcement of its neutral policy against employees receiving both short-term disability benefits and PTO benefits simultaneously was a pretext for discrimination against Jones because of her pregnancy. As such, Jones cannot establish her sex discrimination claim under McDonnell Douglas regarding PSC's decision to not allow her to use her accrued PTO at the same time she was receiving short-term disability benefits.

### d) Jones's Prima Facie Case (PSC's Alleged Underreporting of Hours to MetLife)

Jones also alleges PSC discriminated against her because of her pregnancy when it allegedly underreported her hours-worked to MetLife which resulted in Jones receiving a lower amount of short-term disability benefit than she was entitled to receive. (Doc. No. 22 at 16).

Again, Jones must show that she was treated less favorably than others who were similarly situated but outside the protected class, *Santos*, 778 F. App'x at 302, and again, Jones compares herself to Hernandez. Jones claims that Hernandez was given her "full STD benefit—unlike Plaintiff." (Doc. No. 22 at 16). To support that claim, Jones cites to her own declaration, where she stated that "I believe Maria Hernandez was also paid the full amount of STD benefits to which she was entitled." (Doc. No. 22-13 at 3). Jones cites no other evidence to show that Hernandez received a higher benefit than she did or that Ms. Goharkhay reported Hernandez's hours to MetLife in a way that allowed her to receive her "full" short-term disability benefit. Jones's entire argument is based on her subjective belief that Hernandez received her "full" benefit and that she did not. By itself, this cannot support her prima facie case. *See Campbell v. Griffin*, 265 F. App'x 269, 270 (5th Cir. 2008) (per curium) (unpublished) (affirming summary judgment and finding that "speculative contentions regarding how other employees were treated are not sufficiently supported as to create a genuine issue of material fact."). Jones has failed to put forth any evidence that she was treated less favorably than her chosen comparator, Hernandez.

Both of the arguments put forth by Jones fail to establish genuine disputes of material fact that would overcome PSC's summary judgment. As such, PSC's motion for summary judgment is **GRANTED** as to Jones's sex/pregnancy discrimination claim, and it is **DISMISSED** with prejudice.

### 2. Jones's Disability Discrimination Claim Under Chapter 21 of the Texas Labor Code

Jones's complaint originally brought a claim against PSC for disability discrimination under Chapter 21 of the Texas Labor Code; however, in her response to PSC's Motion for Summary Judgment, Plaintiff expressly withdrew "any stand-alone disability-based causes of action" including any claim under the ADA or the Texas Labor Code. (Doc. No. 1-1 at 7; Doc. No. 22 at 20). Since Jones has withdrawn any disability claim, summary judgment is proper. PSC's Motion for Summary Judgment is **GRANTED** as to Jones's disability discrimination claim, and that claim is **DISMISSED** with prejudice.

### 3. Jones's Retaliation Claim Under Chapter 21 of the Texas Labor Code

Jones's final claim against PSC alleges workplace retaliation under Chapter 21 of the Texas Labor Code. Specifically, Jones complains that due to her "opposing [PSC's] discriminatory pregnancy practices" she was retaliated against by "the uneven application of the use of PTO time, by delayed [short-term disability] benefits, and ultimately a reduced [short-term disability] benefit." (Doc. No. 22 at 20).

The substantive law governing Title VII and TCHRA retaliation claims is identical. *Gorman v. Verizon Wireless Texas, L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014). To make a prima facie case of retaliation, Jones must "demonstrate that: (1) she engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action. Under [the TCHRA], an employee has engaged in protected activity if she has opposed any practice made an unlawful employment practice under [the TCHRA].'" *Id.* (quoting *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (alterations in original)).

If Jones establishes her prima facie case, then the *McDonnell Douglas* burden-shifting framework applies, and the burden then shifts to the employer, who must demonstrate a legitimate non-retaliatory reason for the employment action. *Id.* at 171 (citing *McDonnell Douglas Corp.*, 411 U.S. at 807). If PSC satisfies that burden, then the burden shifts back to Jones who must establish that the employer's stated reason is actually a pretext for unlawful retaliation. *Id.*

PSC argues that Jones cannot make out a prima facie case of retaliation because she did not engage in a protected activity under the TCHRA (or Title VII) other than filing her EEOC charge and there was no alleged retaliatory action taken after Jones filed the EEOC charge. (Doc. No. 20 at 24–25). Jones's position is that the "protected activity" she engaged in that resulted in PSC's retaliation was that of "oppos[ing] discriminatory pregnancy practices occurring at PSC." (Doc. No. 22 at 19–20). That being so, the only "activity" Plaintiff provides evidence of is an email exchange she had with Ms. Goharkhay. (*Id.*). In that exchange, Ms. Goharkhay first informed Jones that when working with MetLife on her short-term disability claim, Ms. Goharkhay had to run a time report in ADP that made "it apparent that over the last 16 weeks [Jones's] average hours worked are 15." (*Id.*). Ms. Goharkhay continued, informing Jones that upon her return to the clinic, she was "required to work (not PTO or holiday hours) a minimum of 32 hours each week as per the company policies." (*Id.*). Jones responded, saying "I'm confused, was that a typo? The 15 hours a week." (*Id.*). Ms. Goharkhay then explained that "[n]o, they [being MetLife] ran a report from April on ADP. I'm asking them to send it to me." (*Id.*). It can only be assumed that Jones's response of "I'm confused, was that a typo? The 15 hours a week," is what she claims is the "oppos[ing] discriminatory pregnancy practices" that Plaintiff claims she engaged in as a protected activity.

The Fifth Circuit has consistently held that a vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity. *Davis v.*

*Dallas Indep. Sch. Dist.*, 448 F. App'x 485, 493 (5th Cir. 2011). Statements much more specific than Jones's statement have been found to be too vague to be considered "protected activity." *See, e.g.*, *Tratree v. BP N. Am. Pipelines, Inc.*, 277 F. App'x 390, 395 (5th Cir. 2008) ("Complaining about unfair treatment without specifying why the treatment is unfair ... is not protected activity."); *Harris–Childs v. Medco Health Solutions, Inc.*, 169 F. App'x 913, 916 (5th Cir. 2006) (affirming summary judgment on retaliation claim where plaintiff never "specifically complained of racial or sexual harassment, only harassment"); *Moore v. United Parcel Serv., Inc.*, 150 F. App'x 315, 319 (5th Cir.2005) ("Moore . . . was not engaged in a protected activity, as his grievance did not oppose or protest racial discrimination or any other unlawful employment practice under Title VII."). Jones's email can hardly be characterized as a complaint, rather her inquiry about whether the 15 hours per week was a typo reads more as simply a question, rather than any complaint about her treatment. This email does not constitute protected activity under the TCHRA.

The only protected activity that could form the basis of a retaliation claim is Plaintiff's EEOC charge; however, she mentions this nowhere in her argument supporting her retaliation claim. (Doc. No. 22 at 19–20). The Court agrees with PSC that Jones has not alleged and cannot prove any retaliatory action by PSC after she filed her EEOC charge.

Jones fails to establish the first element of her prima facie case of retaliation: that she engaged in protected activity. As such, her claim fails and PSC's Motion for Summary Judgment is **GRANTED**, and Jones's retaliation claim is **DISMISSED** with prejudice.

## IV.   CONCLUSION

For the foregoing reasons, Defendant PSC's Motion for Complete Summary Judgment is **GRANTED** in its entirety, and all of Plaintiff's claims are **DISMISSED** with prejudice. A Final Judgement will be entered separately.

It is so ordered.

Signed on this the ___12___ day of January, 2026.

Andrew S. Hanen
United States District Judge